IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH TAGES, M.D., THE LATINO INSTITUTE OF SURGERY, LTD., and WEST SUBURBAN CLINIC, <br><br> Plaintiffs, <br><br> v. <br><br> UNIVISION TELEVISION GROUP, INC. and TELEFUTURA TELEVISION GROUP, INC., <br><br> Defendants. | No. 04 C 3738 <br><br> Judge Robert W. Gettleman |
| UNIVISION TELEVISION GROUP, INC. and TELEFUTURA TELEVISION GROUP, INC., <br><br> Counterclaimants, <br><br> v. <br><br> JOSEPH TAGES, M.D., THE LATINO INSTITUTE OF SURGERY, LTD., and WEST SUBURBAN CLINIC, <br><br> Counterdefendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Joseph Tages, M.D., The Latino Institute of Surgery, Ltd., and West Suburban Clinic filed a three-count complaint in the Circuit Court of Cook County against defendants Univision Television Group, Inc. and Telefutura Television Group, Inc., alleging breach of contract. Plaintiffs seek at least $50,000 in compensatory damages for each count. On June 1, 2004, the case was removed on the basis on diversity jurisdiction under 28 U.S.C § 1332. Defendants filed a six-count counterclaim on June 3, 2004, alleging breach of contract, account

stated, and quantum meruit. Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56 on all of plaintiffs' claims. Defendants have also moved to bar the testimony of Robert C. Brackett, plaintiffs' retained damages expert. For the reasons discussed herein, defendants' motion for summary judgment is granted, and defendants' motion to bar Brackett's testimony is denied as moot.

## FACTS[1]

Plaintiff Joseph Tages, M.D. ("Tages") operates a medical clinic, the Aurora Health Center ("AHC"), in Aurora, Illinois. AHC includes several other entities, including The Latino Institute of Surgery and West Suburban Clinic. Defendant Univision Television Group, Inc. ("UTG") operates WGBO Channel 66 ("WGBO"). Defendant Telefutura Television Group, Inc. ("TTG") operates WXFT Channel 60 ("WXFT"). WGBO and WXFT are Spanish-language stations, and UTG is the parent company of TTG.

In 2002 and 2003 Tages executed annual agreements with WGBO and WXFT to run a certain number of commercials per week. Plaintiffs allege that in May 2002, the parties also orally agreed that defendants would create free of charge three specialty, 30-second commercials: (1) a gastrointestinal commercial; (2) a pain management commercial; and (3) a podiatric commercial. These specialty commercials were to air 12 times a week for a total of 52 weeks. Plaintiffs also allege that defendants agreed to create a generic commercial to air in the interim period until the specialty commercials were ready. Plaintiffs assert that in May 2003, Tages

---

[1] Unless otherwise noted, the following facts, taken from the parties' L.R. 56.1 statements and attached exhibits, are not in dispute. The court notes that a substantial portion of plaintiffs' response to defendants' L.R. 56.1 statement not in compliance with L.R. 56.1(b) because they cite the complaint only.

informed defendants that he wanted to stop running the podiatric commercial, and that defendants orally agreed but failed to do so.

In December 2002, Tages complained to defendants that plaintiffs were not realizing additional business from the advertising. Plaintiffs also claim that after conducting an investigation, defendants told Tages that they had not run plaintiffs' specialty commercials from May through December 2002, but ran the generic commercial only. According to plaintiffs, in early 2004 defendants conducted an audit of plaintiffs' commercials for 2003 and agreed that, "in addition to not airing the three specialty commercials in 2002, not honoring the [May 2003] agreement, defendants failed to run 65 [TTG] commercials, which were promised and paid for." Plaintiffs assert that as a result of defendants' alleged breach of the agreements, plaintiffs failed to receive additional business from the advertising.

Count I of the complaint alleges that defendants breached their May 2002 oral agreement by failing to run plaintiffs' specialty commercials from May 2002 until December 2002. Count II alleges that defendants breach their May 2003 oral agreement to cease running the podiatric commercial and to run only gastrointestinal and pain management commercials. Count III alleges that defendants violated their December 2002 oral agreement[2] by "failing to run plaintiffs' two more elaborate commercials from January 2003 to June 2003."

Defendants' counterclaims are based on plaintiffs' alleged failure to pay for commercials aired by defendants. According to defendants, plaintiffs' last payment for commercials aired on

---

[2]The court notes that neither plaintiffs' complaint nor their L.R. 56.1 statement of additional facts describes the substance of the alleged December 2002 oral agreement.

3

WGBO and WXFT were made on January 30, 2004, and September 30, 2003, respectively, although commercials were aired after these dates.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

4

## DISCUSSION

Plaintiffs assert three breach of contract claims against defendants. Each count alleges that plaintiffs were damaged by defendants' failure to create and air the proper mix of commercials during 2002 and 2003. Under Illinois law, proof of damages proximately caused by the breach is a required element of a breach of contract claim. Schubert v. Federal Express Corp., 715 N.E.2d 659, 661 (Ill. App. Ct. 1999); Klinger Farms, Inc. v. Effingham Equity, Inc., 525 N.E.2d 1172, 1176 (Ill. App. Ct. 1988); see also Thorpe v. Levenfeld, 2005 WL 2420373, at *5 (N.D.Ill. Sept. 29, 2005).

In the instant case, plaintiffs do not dispute any of defendants' L.R. 56.1 statements of facts, and base their opposition to the summary judgment motion on their L.R. 56.1(b) statement of additional material facts. Defendants argue that plaintiffs fail to offer any evidence of damages proximately caused by the alleged breaches. The court agrees, and grants defendants' motion for summary judgment.

Many of plaintiffs' purported "statements of fact" lack proper evidentiary support, as required by L.R. 56.1, or cite to questionable evidence only. First, paragraphs 1 through 25 of the L.R. 56.1(b) statement merely repeat the exact allegations of the complaint without citing additional support in the record. It is axiomatic that pleadings are not facts, and that allegations in a complaint do not create a material issue of fact. Henslee v. Provena Hosp., 373 F. Supp. 2d 802, 806 (N.D.Ill. 2005) ("non-moving party cannot rely on pleadings alone" in response to summary judgment motion). Accordingly, the court does not consider the first 25 paragraphs of plaintiffs' L.R. 56.1(b) statement.

5

Second, the remaining paragraphs of plaintiffs' L.R. 56.1(b) statement cite the affidavit of Robert C. Brackett ("Brackett"), a certified public accountant ("CPA") and plaintiffs' retained damages witness, only.[3] On June 18, 2005, defendants moved to bar Brackett's testimony, arguing that he is not qualified to testify as a witness in this case and that his opinions are not reliable. Defendants argue in their reply in support of summary judgment that the court should strike Brackett's affidavit, which was attached to plaintiffs' response to the summary judgment motion, because it was filed more than five months after the close of discovery and contains new and contradictory opinions not disclosed as required under Fed. R. Civ. P. 26(a) or included in Brackett's expert report or deposition testimony. See Adusumilli v. City of Chicago, 164 F.3d 353, 360 (7th Cir. 1998) (affidavit may not contradict prior deposition testimony); Buckner v. Sam's Club, Inc., 75 F.3d 290, 292 (7th Cir. 1996) (party may not create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony) (collecting cases). The court need not reach the admissibility of Brackett's testimony or affidavit, however, because even if the court considered paragraphs 26 through 45 of plaintiffs' L.R. 56.1(b) statement, plaintiffs have failed to raise a triable issue of material fact that the breaches alleged in the complaint caused damage to plaintiffs.

The crux of plaintiffs' claims is that they gained fewer new patients in 2002 and 2003 because defendants failed to create and air the agreed-upon mix of commercials. Plaintiffs' sole basis for damages is Brackett's testimony and report, and plaintiffs devote the bulk of their opposition to summary judgment to bolstering Brackett's credentials and methodologies.

---

[3]Paragraph 26 also cites "plaintiffs' motion to [sic] bar," which is equally improper because, like pleadings, arguments in briefs are not facts.

Plaintiffs cannot, however, overcome Brackett's complete failure to calculate damages proximately caused by the contract breaches alleged in plaintiffs' complaint, rather than damages caused by the cessation of commercials, which is not even mentioned in the complaint. Indeed, the first line of Brackett's report states, "We were asked to determine the monetary damages to [plaintiffs] resulting from a cessation of advertising on [WGBO] on or about March 4, 2004, and [WXFT] on or about December 28, 2003." Throughout his report, Brackett refers to the "removal of advertising" and the period after the commercials stopped. Brackett's analysis of the cessation of commercials is irrelevant to the breaches that plaintiffs allege occurred months earlier and consisted of running the wrong commercials rather than no commercials at all.

In addition to analyzing a time period unrelated to the alleged breaches, Brackett expressly states that he was not able to analyze the damages caused by defendants' alleged breaches. In lieu of an admissible expert opinion, Brackett offers his "personal belief that the campaign might have generated an average monthly new patient visit level of 70 to 75 had it been aired as agreed to by Dr. Tages." Brackett admits in his report that there is "no analytical information" on which to base his opinion regarding the new patient visits that would have occurred had the advertising campaign been aired as agreed to.

During his deposition, Brackett admitted that he tried to calculate damages based in defendants' alleged failure to air the agreed-upon commercials, but was unable "to identify anything with respect to the specific mix of ads." An opinion that is not support by data is not admissible. See Minasian v. Standard Chartered Bank, PLC, 109 F.3d 1212, 1216 (7th Cir. 1997) (affidavit of expert inadmissible where no data provided to support the opinion offered). That is, a "personal belief" admittedly unsupported by data or evidence cannot be considered as an expert

7

opinion. Zenith Electronics Corp. v. WH-TV Broadcasting Corp., 395 F.3d 416, 419 (7th Cir. 2005) ("A witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines the term."); see also Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago, 877 F.2d 1333, 1339 (7th Cir. 1989) (an expert must give reasons for his opinion, and not merely state his conclusions).

Plaintiffs concede in their brief that Brackett's measure of damages was based on "the comparison of new patient visits when WXFT and WGBO advertised for AHC and when this advertising ceased," but their claims are based on alleged breaches prior to the period analyzed by Brackett. Plaintiffs try in vain to escape the fatal blow delivered by their own expert by arguing that defendants' alleged failure to run the proper combination of commercials prevented Brackett from determining the correct damages. According to Brackett's report, the "failure to air the agreed to advertising in a consistent manner resulted in no periods reflecting the full impact on new patient visits." In support of their argument, plaintiffs cite Haslund v. Simon Prop. Group, Inc., 378 F.3d 653, 658 (7th Cir. 2004), in which the Seventh Circuit noted that, "Once the plaintiff proves injury, broad latitude is allowed in quantifying damages, especially when the defendant's own conduct impedes quantification." The Haslund court, however, also held that this latitude does not apply to the "threshold of injury" which "must be proved the usual way, without speculation or burden shifting." In the instant case, plaintiffs have failed to provide any admissible evidence of injury.

As the Haslund court noted, assessing damages is "often and permissibly speculative, but only within limits." 378 F.3d at 658. To accept plaintiffs' argument would relieve a plaintiff of the burden to establish damages at all in any claims based on failures to act or a non-occurrence,

8

which goes well beyond the limits of permitting flexible damage calculations. Whatever the difficulties posed by calculating hypothetical damages such as lost profits, a plaintiff retains "the burden of proving damages to a reasonable degree of certainty." <u>Williams v. Board of Education</u>, 367 N.E.2d 549, 553 (1977). In the instant case, plaintiffs' expert explicitly stated that he was unable to provide the damage calculations required to effectively oppose summary judgment, and plaintiffs fail to offer any other evidence of injury or damages. Perhaps defendants are right, as they suggest in their motion to bar Brackett's testimony, that plaintiffs' claims require a different kind of expert, such as one with expertise in marketing or consumer behavior rather than accounting. In any event, plaintiffs chose their expert, and more damaging, chose to rely entirely on his opinions, which fail to create a triable issue of fact whether they suffered damages as a result of the breaches alleged in their complaint.

Accordingly, the court grants defendants' motion for summary judgment. Because the court grants defendants' motion for summary judgment, defendants' motion to bar Brackett's testimony is denied as moot.

## CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment is granted. Defendants' motion to bar the testimony of Robert C. Brackett is denied as moot. This matter is set for status on November 8, 2005, at 9:00 a.m. The parties are directed to be prepared to discuss pretrial preparation for a trial on defendants' counterclaims, and to set a trial date.

**ENTER:** October 20, 2005

_____
Robert W. Gettleman
United States District Judge